The next case called for oral argument is People v. McCarty. Counsel? May I please report, counsel? Dustin McCarty was trying to convict an aggravated battery of a peace officer resisting a peace officer and battery. It's our potential appeal that his conviction have to be reversed because the prosecution's closing argument denied him fair trial. It's our intention that the prosecutor improperly derogated the defense counsel in closing argument by suggesting that the defense was arguing for jury nullification and that the state also improperly shifted and diminished the burden of proof in contending that any lack of DNA testing was a non-essential point of the case. Mr. McCarty was tried for aggravated battery of a state trooper after a domestic incident in Edgewood, Illinois. He lived with his girlfriend who had three children. Apparently there was a domestic disturbance in which she'd left the home. She'd returned and found items in the house strewn about, disturbed. She called the police and the state troopers were the nearest available officers to respond. So they came to the area to search for Mr. McCarty, who was not in the home, was thought to be in the general neighborhood. They couldn't find him and they departed the area. The girlfriend left the apartment, left the home, came back to find further disturbance in the house, assuming that Mr. McCarty was responsible for it. The state troopers recalled seeing and located him hiding in a wooded area nearby. The trooper and a neighbor who had seen Mr. McCarty in the area and saw where he had gone to hide were able to bring him out of the woods. And in the course of doing so, Mr. McCarty resisted being brought to the vehicle and allegedly spit on the neighbor who was assisting the state trooper. During the course of the transportation of Mr. McCarty by the state trooper from the scene back to their headquarters in Effingham, the trooper alleged that Mr. McCarty at one point spit on the trooper and spit on the in-car computer. During the cross-examination of the trooper, defense counsel was able to get the trooper to admit that the act of spitting, whether the trooper himself was actually spat upon, the act of spitting interfered with the trooper's ability to complete his job, drive the vehicle. The spit on the computer conceivably interfered with his ability to do the job. Based on that, the defense argued that in addition to the activated battery of the trooper instructions, there ought to be an instruction for resisting that the spitting was an act of resisting lesser offense. The state's reaction to that was that the defense was going to argue for nullification, going to say, well, if you don't want to find me guilty of this battery of the state trooper, find me guilty of something less. The defense disclaimed any interest in doing that, but the court instructed the defense don't argue nullification. The defense didn't argue nullification. The defense did argue that the trooper had admitted that he didn't have the stains on his uniform tested. There was no independent evidence that there had been spit on the trooper's uniform and that it basically came down to the trooper's word that he had been spat upon when there wasn't further evidence to support the claim. And that based on that, the most you knew from the video, in-car video, was that there had been spit on the in-car computer and that that might have interfered with the trooper's doing his job and that that's resisting. The state's response to that was that the defense was arguing to cut the defendant's break, to go for the lesser offense, and that that was doing them a favor. The defense objected to the statement that the defense was trying to get a favor, and the court sustained that objection, but denied a motion for mistrial. It's architectural that that isn't sufficient, that the argument itself was prejudicial. The attack on the defense counsel's credibility, his veracity, his—the claim that the defense counsel was trying to nullify is an attack on the essential truthfulness of defense counsel and his willingness to apply the law. Nullification is a very serious problem that courts across the country strive to avoid having juries nullified, and essentially a nullified jury acts lawlessly, and the allegation that the defense counsel is attempting to get a jury to act lawlessly is an attack on counsel. Did the state actually use the word that the defendant would be rewarded? That's the key, if he was only found guilty of resisting. I think it was—well, I believe that such a person would be a reward to the defendant. My other contention about this closing argument was that the state's response to defense pointing out that there had been no DNA testing or the alleged spit on the state trooper was that we don't do DNA testing in every little case that comes down the road, that this case isn't important enough to merit that kind of expense, and that the trooper's word is good enough. Again, this is essentially a diminishment of what is expected of the prosecution. The state's essentially telling the jury, this case is kind of small potatoes. We don't need to really look too close to how strong the evidence is. We don't have to do all the testing to get the best evidence. Just take our word for it. And the combination of a burden-diminishing argument and an attack on defense counsel is sufficient in this instance to require this court to reverse the convictions. Thank you, counsel. Counsel? Thank you. May it please the Court. My name is Timothy James Ting, and I represent the people of the state of Illinois. Your Honors, in my time before this Court, I will show you why the defense convictions should be affirmed. Two reasons. First, prosecutors have a wide range of discretion in the remarks that they make during closing arguments, particularly when such remarks are invited by defense counsel. And number two, even if one or both of the remarks made by the prosecutor in this case were improper, they were not substantially prejudicial. As the Illinois Supreme Court stated in People v. Hudson, and I quote, improper remarks must be so substantially prejudicial that absent those remarks, the verdict would have been different. Did Hudson include a violation of a motion in limine? I'm sorry, Your Honor? Did Hudson include an in limine order that the trial court entered? No, Your Honor, it did not. However, the thrust of Hudson was that improper remarks made by a prosecutor was what they were looking at versus a violation of a motion in limine. Moreover, the motion in limine in this case was made by the prosecutor. So in essence, the prosecutor violated his own motion in limine. Now, Your Honors, before I delve into the substantive merits of this case, I want to stress the significance of publishing this opinion, and it goes directly to the standard of review. Now, prior to 2007, it was clear. Abuse of discretion was the type of standard of review for a reviewing court to utilize when determining whether improper remarks made by a prosecutor during closing arguments merited reversal. But in 2007, the Illinois Supreme Court did a curious thing in People v. Wheeler. They said the standard of review was actually denoted. But in doing so, they cited two prior Illinois Supreme Court cases which stated that the standard of review was abuse of discretion. Not surprisingly, this has confounded the district since the Wheeler decision. And as it stands, every district except for this one, the first, second, third, and fourth have all weighed in. Now, as it stands, the districts are evenly split. And you can see this on my brief on 8 through 10, pages 8 through 10 of my analysis. Now, the first and second advocate an abuse of discretion standard, whereas the third and fourth districts advocate for a de novo standard. Therefore, this court is in a unique position to tip the scales, to alter the balance one way or the other. And while the state succeeds in this case under either standard of review, the significance of publishing the analysis on the standard of review is not merely for this case. It is for opinion-driven voters and prosecutors alike to aid in their determination of arguing this case. Moreover, it puts the Illinois Supreme Court on notice that every district has weighed in and given their respective opinions as to what the standard of review is. Accordingly, it is imperative that an analysis is published for that particular part of the case. Now, as it is to the merits of the case, there are two remarks in the question. Both remarks came when the prosecutors were bubble-closing, and both remarks were invited by the defense. Now, at the outset, I want to stress to this court that the two cases which I cited in my brief that were particularly on point, 2010 cases of Hammonds, which you can find on page 5, and Harmerson, which you can find on page 5, and Hammonds, which you can find on page 10 and 11, the defense does not respond to either an interplied brief or an oral argument today. His omission is telling. By doing nothing, claiming nothing, and not distinguishing those cases, the defense – it is as close to a concession as one can get without explicitly waving one's hands up in the air and saying, I give. The Hammerson case particularly – let's look at the record first. The record here on the first remark is that the defense stated in its closing arguments, if you find that some spitting happened – and I'm quoting on page 416 of the record – if you find that some spitting did happen, this is the charge, resisting a peace officer for spitting. And with that, ladies and gentlemen, this is my time, my last time to pitch the case. I'm asking for not guilty. If you're going to find me guilty of anything, resisting a peace officer for spitting. That's what the defense stated, 416. Then thereafter, in the rebuttal closing, the prosecutor stated that, listen, we have a case here where there is ample circumstantial evidence that there was spitting on the officer. Aggravated battery can be supported by the evidence presented. Therefore, it's a reward for the defendant to merely – he did state the reward as particularly responding to your question, Justice Blackstone. It's a reward for the defendant merely to get a lesser charge. Now, in Hammerson, the prosecutor stated specifically that it would be a reward for the defendant to be not guilty of this case. In fact, the entire trial was, and I quote, a reward for the defendant. Not surprisingly, the defendant stated, hey, on appeal, this is clear error. This was an improper remark during closing argument. The Congress in court on appeal, though, stated specifically that that was not improper because he was – the prosecutor was merely responding to the evidence presented at the trial. And while it was mostly circumstantial, it did not mean that it was necessarily indicative of no guilt. Same facts apply here. Moreover, in the second remark, the defendant – the prosecutor stated specifically – actually, let's start with the defendant's remark. The defendant stated specifically that in his closing, and I quote from page 406 of the record, the state would have you believe, oh, we don't need DNA evidence. Whatever happened that night, he is not proving it. It's not guilty, end quote. And that's on 412 of the record. Now, that is specific invitations for the prosecutor. Thereafter, the prosecutor, in his rebuttal closing, stated specifically, most crimes don't get committed in front of cameras. In 99.999% of cases, DNA has nothing to do with it. And that was on page 418 of the record. Now, the trial court stated, listen, clearly, I'll sustain the objection as it reports to these statistics. And the state would not argue that that was certainly an improper statistic. However, notably, the trial court itself stated that it did not over – or it overruled the defendant's objection as to the commonplace nature of DNA cases. And this is found specifically in the record on page 418, in which the trial court stated the objection is sustained to this extent that the jury is to disregard the precise percentage that Mr. Dieter's just argued. However, the objection is overruled with regards to any general objection being made to the reference majority of DNA, majority of cases in use of DNA. Now, in the 2010 case of Hammonds, the prosecutor – the defendant stated specifically, we don't have any DNA evidence. And because we don't have any DNA evidence, the prosecutor has failed to show his burden of proof. The prosecutor then, in rebuttal, closing in Hammonds stated specifically, listen, we don't need every technological tool available to us, whether it's DNA evidence or camera, video camera, to show that we are, in fact, proving our case beyond a reasonable doubt. The same factual circumstances of Hammonds apply here. And by the defendant not responding to either Hammonds or Homerson, his omission is as close to a concession as one could hope. Moreover, Your Honors, even if either or both of these arguments were improper, as I stated before, they were not substantially prejudicial. The trial court specifically sustained both of the defendant's objections. And while the statement says that the defendant got more than he deserved because those arguments weren't necessarily improper, even though – even so, the trial court sustained those objections and then properly gave the jury instructions, as you can see on pages 418, 426, and then the jury's instructions on pages 430 through 431 in the record. Because the trial court cured the potential damaging remarks of either of those remarks not once but twice, surely this is a case in which the remarks made by the prosecutor did not change the verdict. And lastly, Your Honors, the defendant's – in his reply brief stated that there is only a testimony of one person as far as the spitting that occurred to him at the Trooper Ferguson. States Record Cite 281, which states that the civilian witness said that Trooper Ferguson was spit on by the defendant. So that is two witnesses who stated that the spitting happened. With that corroborated testimony and the video evidence demonstrating the violent mannerisms of the defendant and spitting, which is clearly evident on the patrolled man's car computer, the evidence was not closely balanced here where the jury had a tough time figuring out which verdict to give. In fact, the defendant had an opportunity to present evidence of the contrary. He did not. Therefore, Your Honors, I urge this court to publish an opinion as it refers to the standard review on improper remarks made by a prosecutor during closing arguments and the defendant's – I see my time is up. May I finish? Yes. And the defendant's conviction should be affirmed. It is well settled that defendants are entitled not to a perfect trial unencumbered from any and all mistake, but rather to a fair trial. That much the defendant here received. Thank you. Thank you. Counsel? I will give you an extra minute if you need it to. As to the question about the standard review, districts of the appellate court are perhaps justifiably reluctant to send messages to the Supreme Court about what the law is. What we have as the law now is the last statement of the Illinois Supreme Court, which is that review of these issues is de novo, and I urge this court to apply that standard. As to the contentions about the spitting on the trooper, the offensive conduct that caused the aggregate battery, the trooper's testimony is what really matters to her. The point is that he's in the car transporting the defendant and his staff on the car. He doesn't claim there was spitting on him when they were carrying and dragging the defendant from the wooded area back to the state trooper's vehicle. If the court looks at the video, there's an in-car video. It's very dark, hard to really see a lot of what's going on. It is evident that at one point during the trip, the defendant is shoved up against the window of the vehicle and held there for a while. You can see on the camera that the defendant appears to be talking at length, saying things you can't tell. There's no audio, you don't know what he's saying. With regard to what happened to the state trooper, it's what happened in the vehicle that counts. As to the defendant's obligation to rebut the state's evidence with some evidence of its own, the defendant's within his rights to stand on the presumption of innocence and require the state to prove it. The defense's contention here was that they could have made their case with DNA testing of this alleged spit, and they didn't, and that cast doubt on the state's case. It wasn't an argument for nullification, it was just an argument about the weakness of the state's case. In that light, the state's opposing argument was improper, and the conviction ought to be reversed. Thank you. Thank you, counsel. We appreciate the recent arguments of both counsel to take the case under advisement.